J. A09006/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID AULT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ETHEL H. AND THOMAS E. AULT, | : | No. 1818 MDA 2015 |
| | : | |
| Appellants | : | |

Appeal from the Judgment Entered October 16, 2015,
in the Court of Common Pleas of Centre County
Civil Division at No. 2014-2108

BEFORE:  FORD ELLIOTT, P.J.E., JENKINS AND PLATT,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:　　　　　　**FILED MAY 24, 2016**

Ethel[1] H. Ault and Thomas E. Ault (collectively, "appellants") appeal the order of the Court of Common Pleas of Centre County that entered judgment in favor of David Ault in the amount of $35,506.

On September 25, 2001, Harland E. Ault, Ethel H. Ault, Thomas E. Ault, Clint Frazier, in his individual capacity and as trustee of the J.H. Ault Trust, Jaime Ault, and David Ault, in his individual capacity and as trustee for Dillon Ault, a minor (collectively, referred to as the "Partnership") entered into a limited partnership agreement ("Partnership Agreement") for

---

* Retired Senior Judge assigned to the Superior Court.

[1] Curiously, Ethel Ault's first name is spelled "Ethyl" in certain documents and in the trial court caption even though she testified she spelled her name as "Ethel."  (Notes of testimony, 6/24/15 at 4.)  The trial court acknowledged that her name was spelled incorrectly in the caption there.

the purpose of the ownership and management of real estate. Harland E. Ault and Ethel H. Ault were the general partners as well as limited partners. Upon the death of Harland E. Ault, Ethel H. Ault became the sole general partner. Each limited partner currently has an interest of 14.8221 percent.

The Partnership entered into an agreement with S & A Homes for the sale of some real property owned by the Partnership. Under the terms of the agreement, S & A Homes made an initial payment to the Partnership and then annual payments for several years. In June 2013, S & A Homes made the last payment to the Partnership in the amount of $238,802. In July 2013, Ethel H. Ault wrote distribution checks to each limited partner. The check for David Ault, Ethel Ault's grandson, was made payable to David Ault or Thomas [E.] Ault. Thomas E. Ault is Ethel Ault's son and David Ault's father. Thomas E. Ault deposited the check into a Uniform Gifts to Minors custodial account for the benefit of David Ault's three children. David Ault did not receive the check in the amount of $35,506.00. He learned of the distribution when he received the Partnership's K-1 form in 2014.

On or about June 4, 2014, David Ault commenced an action in the trial court and alleged that appellants violated the terms of the Partnership Agreement when the check was issued to Thomas Ault but deposited into the account for the benefit of David Ault's children. David Ault filed suit for $46,062 plus interest from July 2, 2013 plus costs.

In answer and new matter, appellants alleged that Thomas E. Ault and David Ault discussed the 2013 distribution and that David Ault agreed that his distribution should be put in a Uniform Gifts to Minors Act custodial account with David Ault's siblings, Nichole M. Mansell or Jaime J. Ault, appointed as custodians for the benefit of David Ault's three children. Appellants requested that the complaint be dismissed.

Initially, the case proceeded to a panel of arbitrators due to the amount in dispute. The arbitrators awarded judgment in favor of David Ault in the amount of $10,556. Appellants appealed to the trial court.

On June 24, 2015, the trial court conducted a non-jury trial. Ethel H. Ault testified on cross-examination that as general partner she was the only person in charge of making disbursements. (Notes of testimony, 6/24/15 at 5.) When asked why she made the July 2, 2013 distribution check payable to Thomas or David, she replied, "I guess that's the way I wanted it." (**Id.** at 6.) She further testified that she gave the check to Thomas E. Ault and did not tell David Ault that she wrote the check to Thomas or David. (**Id.** at 6.) Although the K-1 showed a distribution of $46,062 to David Ault, Ethel Ault explained that the actual amount was approximately $35,000. (**Id.** at 7.)

David Ault testified that in February or March of 2014 his father, Thomas E. Ault, informed him that there was a distribution and that he had "Put it into a certificate of deposit for [David Ault's] three children, and it

turns out [David Ault's] brother and sister were named. It was their CD and benefit of the children." (*Id.* at 10.) David Ault had to pay tax on this distribution even though he did not receive it. (*Id.* at 10-11.) He testified that he did not authorize Ethel H. Ault to distribute the funds for which he was entitled in the manner that she chose to distribute them. (*Id.* at 11-12.) On cross-examination, David Ault denied that he reached an agreement with his father to place his distribution into an account for the benefit of his children and then forgot that he made such an authorization. (*Id.* at 17-18.)

Thomas E. Ault testified on cross-examination that he directed Ethel H. Ault to issue the distribution check to him or David Ault. Thomas E. Ault admitted that he deposited the check based on an oral agreement with David Ault. He admitted that he was estranged from his son. (*Id.* at 21-22.) Thomas E. Ault explained how he reached the alleged oral agreement with David Ault:

> Well, I talked to him in May of 2013, because the payment was coming in June, and I said to him about this payment coming, you know, and I suggested it be put in for his children.
>
> He said, well, I didn't know we had another payment coming.
>
> I said, yeah. I said, this is the final payment from S&A.
>
> He said, well, I didn't know it was coming so it's not like I'm going to miss it.

*Id.* at 22.

Thomas E. Ault explained that he took his son's statement that he was not going to miss the payment as his agreement with Thomas E. Ault's plan to set up an account for his grandchildren, David Ault's children. (*Id.* at 23.) Thomas E. Ault did not inform David Ault after he opened the account for the minor children. (*Id.* at 25.) Thomas E. Ault admitted that he had no authority to direct Ethel H. Ault to issue the check to David Ault or Thomas E. Ault. (*Id.* at 26.) On direct examination, Thomas E. Ault testified that David Ault's ex-wife agreed to the opening of the account for the children as she normally received a portion of David Ault's distribution as a result of the divorce agreement. (*Id.* at 31.)

On August 19, 2015, the trial court entered judgment in favor of David Ault in the amount of \$35,506.[2]

On August 31, 2015, appellants moved for post-trial relief and moved to modify the verdict. They asserted that David Ault was equitably estopped from seeking judgment against them because David Ault induced Thomas E. Ault to place the funds in the custodial account when he said that he would not miss the money and failed to object to the placement of the funds.

On October 6, 2015, the trial court denied the motion for post-trial relief:

---

[2] Although the total amount withdrawn and distributed according to the K-1 was \$46,062, the parties apparently agreed that the actual distribution from S & A Homes was \$35,506.

Here, [appellants] argue [David Ault] induced Defendant Thomas Ault to place [David Ault's] distribution in a custodial account by stating that he would not miss the money and by failing to object to such placement of the funds. The conversation regarding the 2013 distribution, however, did not rise to the level of agreement or consent. The conversation was not sufficiently clear as to place an obligation on [David Ault] to further act or speak in opposition to the proposal. There was conflicting testimony regarding the conversation, and there was no testimony regarding a discussion about the manner in which the custodial account would be created. Merely stating he would not miss the money was insufficient to induce [appellants'] actions.

Further, [appellants] were not justified in relying on the conversation. The Partnership Agreement states "[c]ash, when available, shall be distributed by the general partners to all partners in the same ratio as profits and losses are allocated." Agreement § 3.05. Under the partnership agreement, Defendant Thomas Ault is a limited partner and does not have the authority to alter the distribution or to direct Defendant Ethel Ault to alter the distribution. Defendant, Ethel Ault, as the general partner, had a duty to follow the Limited Partnership Agreement and dispense [David Ault's] portion of the funds to him. As such, [appellants] were not justified in relying on the conversation with [David Ault].

Trial court opinion, 10/6/15 at 2-3.

Appellants raise the following issues for this court's review:

1. Whether the trial court erred as a matter of law when it held that the law required an agreement or consent for [David Ault's] actions to satisfy the element of inducement[?]

2. Whether the trial court abused its discretion in holding that [appellants] were not justified

> under the circumstances in relying on the words and actions of [David Ault][?]

Appellants' brief at 4.

This court's review of a trial court's denial of a motion for post-trial relief is limited to determining whether the trial court abused its discretion or committed an error of law. ***Paliometros v. Loyola***, 932 A.2d 128, 132 (Pa.Super. 2007).

Initially, appellants contend that the trial court erred when it held that the law required an agreement or consent for David Ault's actions to constitute inducement in order to satisfy the requirements of equitable estoppel.

> Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity. [Citations omitted.]

> The two essential elements of equitable estoppel are inducement and justifiable reliance on that inducement. The inducement may be words or conduct and the acts that are induced may be by commission or forbearance provided that a change in condition results causing disadvantage to the one induced. ***See generally***, ***Funds for Business Growth, Inc. v. Woodland Marble and Tile Company***. . . 278 A.2d 922 ([Pa.] 1971); ***Ham v. Gouge*** . . . 257 A.2d 650 ([Pa.Super.] 1969).

> The elements of equitable estoppel and the burden of proof required to support such a claim are

> well stated in ***Blofsen v. Cutaiar*** . . . 333 A.2d 841 ([Pa.] 1975).

>> Equitable estoppel applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken . . . the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, over a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct or statements.

>> . . . .

>> It is well established . . . that the burden rests on the party asserting the estoppel to establish such estoppel by clear, precise and unequivocal evidence.

> ***Blofsen***, 333 A.2d at 844.

***Novelty Knitting Mills, Inc. v. Siskind***, 457 A.2d 502, 503-504 (Pa. 1983).

Here, appellants argue that David Ault's statement that he would not miss the distribution because he did not know it was coming induced them to make the check payable to Thomas Ault or David Ault and to establish the account for David Ault's minor children. Further, the fact that David Ault did not object to the idea contributed to the inducement, according to appellants.

The trial court determined that David Ault's statement that he would not miss the money was insufficient to induce appellants' actions.

Appellants failed to convince the trial court that they met their burden to establish that David Ault was equitably estopped from challenging the transfer of the distribution to which he was entitled to an account for his children. This court is satisfied after reviewing the record that there is no basis upon which to disturb the trial court's conclusions. This court agrees with the trial court that David Ault did not induce appellants to act.

Appellants also contend that the trial court abused its discretion when it found that they could not rely on the words and actions of David Ault to follow the course of action they did because the Partnership Agreement required that the general partner distribute available cash to the limited partners and that any change regarding the distribution was required to be in writing. Because this court determines that the trial court did not err when it found that David Ault did not agree to the placement of his share in an account for his children, this court need not address in detail the Partnership Agreement. However, this court notes that the trial court accurately stated that the Partnership Agreement required Ethel H. Ault as general partner to pay the distribution to David Ault, a limited partner. The Partnership Agreement also states that any amendment to it requires the written consent of all partners. Thomas E. Ault did not have authority under the Partnership Agreement to direct Ethel H. Ault to take David Ault's distribution and make a check in the amount of the distribution to Thomas

J. A09006/16

Ault or David Ault.  Further, Ethel H. Ault did not have the authority to make that decision herself.

Judgment affirmed.


Judgment Entered.

JosephD.Seletyn,Esq.
Prothonotary

Date: 5/24/2016