### MANLEY v. NORTHUMBERLAND COUNTY.

#### No. 4114.

District Court, M. D. Pennsylvania.
June 22, 1940.

Charles E. Berger, of Pottsville, Pa., J. A. Welsh, of Shamokin, Pa., and Duane R. Dills, Jack J. Levinson, and M. Golden, all of New York City, for plaintiff.

Samuel Gubin, of Sunbury, Pa., Roy P. Hicks, of Pottsville, Pa., H. F. Bonno, of Shamokin, Pa., and Carl Rice, Solicitor for Northumberland County, of Sunbury, Pa., for defendant.

JOHNSON, District Judge.

This is an action in assumpsit on a written contract under seal between the Poole Engineering and Machine Company and the County of Northumberland, Pennsylvania, dated June 13, 1931. The contract provides for the sale of voting machines to the county and for payment to the Poole Company of certain sums alleged to have been due under the contract on December 1, 1931. The case was tried before a jury and a verdict found in favor of the plaintiff for $77,700, plus interest from December 1, 1931 to June 17, 1939 in the sum of $35,171.68, making a total of $112,871.68. On June 26, 1939 defendant moved for a new trial, assigning forty-three reasons therefor. November 16, 1939, after the record of the trial proceedings was filed, defendant with permission of the court filed seventeen additional reasons for a new trial. This motion for a new trial is now before the court for disposition. Argument was heard in open court and exhaustive briefs were filed by the parties.

The various assignments of error can be grouped in nine general classifications, under which they will be considered.

I. Reasons 1, 2, and 3 are the general assignments that the verdict is against the evidence, against the weight of the evidence, and against the law. These assignments of error will not be further considered except as they are raised by specific errors alleged.

II. Reasons 4, 5, 6, 7 and 23 raise the question whether, if defendant is liable at all, it is liable under this contract for seventy-four, or for only sixty voting machines. The contract provides for the Poole Company "to manufacture and deliver to said Commissioners, sixty (60) voting machines, known as the American Voting Machine, on or before the first day of August, A. D. 1931, * * *. If more than sixty (60) machines are required by said County, additional machines will be furnished by the Contractor, on the same terms and conditions and at the same unit price, to wit; Ten Hundred fifty ($1050.-00) dollars for each machine.": Trial Record, Vol. IX, page 68. The specifications, upon which the contract was let, and which are specifically made part of the contract (Trial Record, Vol. IX, page 68), state: "The number of voting machines to be furnished under these specifications shall be sixty (60) more or less". Trial Record, Vol. IX, page 71.

Sixty machines were delivered on or before August 1, 1931, and pursuant to subsequent orders fourteen more machines were delivered. It is argued by the defendant that these fourteen machines later delivered do not come within the contract here sued upon. At the trial the court ruled otherwise (Trial Record, Vol. XIII, page 38), and at this time sustains that ruling. The contract of the parties must be viewed as a whole to determine its clear purpose and intent. The above language of the contract is sufficiently broad to include seventy-four machines, and from all the evidence presented on this point, it is clear that the parties intended this one contract to bind them not only for the sale and purchase of sixty machines, but for other additional machines if needed and ordered. Therefore, the ruling was proper that, if recovery was allowable at all, it was allowable for seventy-four machines.

III. Reasons 8, 9, 12, 13, 14, 15, 18, 20, 21, 31 and additional reasons 1, 2, 3, 4, 5, 6, 7 and 8 all question the action of the court in admitting into evidence in this case pleadings and docket entries in an equity suit in Northumberland County, and in permitting oral testimony to prove proper execution of pleadings in that equity suit.

The bill in equity in the Northumberland County court was brought by taxpayers as plaintiffs against the County Commissioners of Northumberland County, the Controller of the County of Northumberland, and the Poole Engineering and Machine Company as defendants, to restrain further performance on the contract between the Poole Company and the County of Northumberland, and to require the county commissioners to take appropriate action against the Poole Company to enforce whatever rights existed against the company due to an alleged failure of the voting machines to operate properly. Trial

Record, Vol. IX, pages 13 to 34, inclusive. The bill was filed November 30, 1931 (Trial Record, Vol. IX, page 87). November 14, 1932, the county commissioners named as defendants having been replaced by election, the newly elected commissioners were substituted as defendants, and the same day leave was granted the commissioners to join as plaintiffs (Trial Record, Vol. IX, page 89). October 8, 1934 the taxpayer plaintiffs were granted leave to withdraw from the suit and the bill was discontinued as to them (Trial Record, Vol. IX, page 90). July 12, 1937 the county commissioners were granted leave to withdraw as plaintiffs and the bill was discontinued as to them (Trial Record, Vol. IX, page 92).

Objection is made to the admission in the present case of a copy of the docket entries in the equity suit. There being a substantial identity of parties and issues in the equity suit and the present suit, the admission of the docket entries was not improper. The same applies to the admission of the taxpayers' petition for leave to discontinue the equity action as to them.

Strenuous objection is raised because the court in this case admitted in evidence an answer filed in the bill in equity, signed by two of the county commissioners originally named defendants in that suit. A copy of this answer appears in the Trial Record, Vol. IX, pages 104 to 110. If the answer was filed with proper authority and if it was the answer of the County of Northumberland, statements therein constitute admissions of the county and are admissible in evidence against it in the present action. Henry: Pennsylvania Trial Evidence, pages 86 and 87, and cases there cited; Gibson v. Rowland, 35 Pa.Super. 158, 165; Barclay v. Barclay, 230 Pa. 467, 471, 79 A. 667.

The corporate power of each county is vested in a board of three county commissioners. 1929 Pa.P.L. 1278, art. II, sec. 23, 16 P.S.Pa. § 23; 1929 Pa.P.L. 1278, art. III, sec. 101, 16 P.S.Pa. § 101. Two of the commissioners are sufficient to form a board for the transaction of business, and when convened in pursuance of notice, or according to adjournment, they are competent to perform all duties appertaining to the office of county commissioners. 1929 Pa.P.L. 1278, art. III, sec. 105, 16 P.S.Pa. § 105.

An answer filed by the commissioners in their official capacity would be an answer of the county and statements therein would be admissions of the county. However, proper action by the board of commissioners authorizing the filing of the answer on their behalf was required. Nothing appears in the minutes of the commissioners to indicate that any action was ever taken to authorize the filing of such answer. It is provided by statute that the chief clerk of the commissioners shall record and file their proceedings. 1929 Pa. P.L. 1278, art. III, sec. 110, 16 P.S.Pa. § 110. From this fact it is argued that if no action appears on the recorded minutes, none can be proved by oral testimony. The statute providing for recording minutes is similar to statutes construed years ago by the high courts of Pennsylvania. Barton v. Pittsburgh, 4 Brewst., Pa., 373, 381; Fisher v. Borough of South Williamsport, 1 Pa.Super. 386, 404. Those statutes required the keeping of minutes of proceedings of city councils, and it was held they were directory solely, and not conclusive, and that action of those bodies could be proved by the verbal testimony of persons present at the meetings. The statute requiring minutes of meetings of county commissioners to be kept is likewise directory and action can be proved by oral testimony beyond the record. It is true that parol testimony could not be used to contradict the record (Geiser Manufacturing Company v. Frankford Township, 40 Pa. Super. 97; Commonwealth v. King, 17 Pa. Dist. 785), but it can properly be used to supplement the record. Jacoby v. Lehigh County, 36 Pa.Super. 194.

By credible testimony it was proved at the trial that the county commissioners at a regular meeting had authorized the filing of this answer by them in their official capacity. The meeting in question was held Saturday, January 2, 1932. Regular meetings of the county commissioners were held on Fridays, but the court will take judicial notice that January 1, 1932 was a legal holiday, thereby causing the regular meeting to fall on Saturday. There was sufficient proof of authority to execute and file the answer, sufficient proof of its execution and that it was authorized and executed in an official capacity, and therefore became the answer of the county. Therefore, statements in that answer can properly be introduced in a subsequent proceeding against the county, as admissions by the county. The statements in the answer, the minutes of the

meetings of the county commissioners, and the verbal testimony of the commissioners' action, when so linked together, were all properly admitted in the trial of this action.

IV. Reasons 19, 22, 24, 25, 26, 27, 30, 32, 33, 35, 36 and 37 raise the question whether the defendant if it wished to rescind the contract must rescind it within a reasonable time. At the trial the court refused to affirm unqualifiedly several of the defendant's points for charge because they failed to take into consideration whether or not the defendant had acted to rescind the contract within a reasonable time.

Section 69 of the Sales Act 1915 Pa.P.L. 543, 69 P.S.Pa. § 314, gives the buyer a right to rescind, but provides he must exercise that right within a reasonable time. One paragraph of the contract sued upon reads: "Said contractor agrees that if said voting machines, through any mechanical defects, faulty mechanism, construction or design fail to do the work for which they are designed, or fail to properly meet the requirements necessary for successful use as voting machines in accordance with the plans and specifications hereto attached, then said commissioners shall not be liable for the payment of any moneys under this contract." Trial Record, Vol. IX, page 69.

The defendant contends that this paragraph is an express agreement of the right to rescind and thus avoids liability, and is so worded that it takes the transaction out of the Sales Act, and therefore argues that the provision of the Sales Act that rescission must be made within a reasonable time, has no application to this contract.

■ The provisions of section 69 of the Sales Act apply with equal force to express and implied warranties. Williston on Sales (1909), page 1002. The parties to a contract which would be governed by the Sales Act can, by express agreement, provide for rights and liabilities other than those specified in the Act. 1915 Pa.P.L. 543, sec. 71, 69 P.S.Pa. § 332. The above quoted paragraph of the contract in this case is not an express agreement negativing the provision of the Sales Act that if a buyer wishes to rescind he must exercise that right within a reasonable time. The contract must be read as a whole to determine the clear intent of the parties, and from a careful consideration of the entire contract the only reasonable conclusion is that the parties intended action relative to rescission to be taken within a reasonable time, if at all. The court properly instructed the jury in the law on this matter, and the verdict of the jury shows that they have found the time was unreasonable. That was solely within their province to decide, and they have made their finding under proper instructions from the court.

■ Within this same group of reasons, objection is made that the court erred in instructing the jury that it was not a breach of the contract by the seller if defects in the machines arose and were discovered through use on election day, if such mechanical defects could be repaired. This was not error in view of the express provision in the contract that "Said contractor * * * agrees that in the event any parts shall be broken, or there shall be revealed any mechanical defects, or if for any cause, said machines shall not operate properly and register the votes of the electors using the same, said Contractor shall immediately repair said defects and place said machines in proper working condition and if this cannot be done, replace it with a new machine." Trial Record, Vol. IX, page 69.

This gives the contractor the right to repair or replace, so that the mere proof that mechanical defects did arise, would not alone be sufficient proof that the seller was guilty of a breach of the contract.

V. Reasons 38, 39, 40, 41 and 42 concern the applicability of the Sales Act to the contract in question.

■ The thirty-eighth reason alleges that it was error for the court to charge the jury that this was a sale of articles under a trade name—"American Voting Machine"—and, therefore, no implied warranty of fitness for use as a voting machine arose. Trial Record, Vol. XIII, page 28. This was not error, but a correct statement of the law expressed in section 15 of the Sales Act, 1915 Pa.P.L. 543, 69 P.S.Pa. § 124.

■ The thirty-ninth reason is similar. There the court told the jury that no implied warranties arose under the contract. Trial Record, Vol. XIII, page 28. Reading this with the charge as a whole it is nothing more than an expression of the law that "In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any par-

ticular purpose". 1915 Pa.P.L. 543, sec. 15, 69 P.S.Pa. § 124.

The fortieth reason alleges it was error for the court to tell the jury that the Sales Act applies here as fully and completely as if the parties were individuals instead of corporations. Trial Record, Vol. XIII, page 29. This was a correct statement, as "person" is defined by the Act to include corporations. 1915 Pa.P.L. 543, sec. 76, 69 P.S.Pa. § 337.

The forty-first reason urges that it was error for the court to instruct the jury that if the defendant wished to rescind the contract, it would have to rescind with an offer to return the machines. Trial Record, Vol. XIII, page 30. This is a correct statement of the law as found in section 69 of the Sales Act, which provides that where there has been a breach of warranty by the seller, the buyer may "Rescind the contract to sell or the sale and refuse to receive the goods, or, if the goods have already been received, return them or offer to return them to the seller, and recover the price or any part thereof which has been paid." 1915 Pa.P.L. 543, sec. 69, 69 P.S.Pa. § 314.

The cases cited by the defendant do not support its point. Holloway v. Jacoby, 120 Pa. 583, 15 A. 487, 6 Am.St.Rep. 737, and Samuel v. Delaware River Steel Company, 264 Pa. 190, 107 A. 700, merely establish the proposition that where there are express warranties, they survive acceptance of the goods, so that the seller can accept the articles sold, and still sue for breach of warranty. These cases, however, do not disturb the well recognized proposition that if the buyer wishes to rescind the contract, as contrasted to suing for breach of warranty, it is incumbent upon him to rescind with a return of, or an offer to return, the goods received. Bee, Inc., v. Pizor, 126 Pa.Super. 97, 190 A. 419.

The forty-second reason alleges that it was error for the court to instruct the jury that the delivery of the seventy-four voting machines to the county of Northumberland and their use at the elections held September 15, 1931 and November 3, 1931, respectively, passed the title to said machines to the county. Trial Record, Vol. XIII, page 31. This was a proper statement of the law as seen from the terms of the contract and the intention of the parties as evidenced thereby, and a like conclusion has been reached by the Su-

preme Court of Pennsylvania in a similar case. Fleming v. Adamson, 321 Pa. 28, 182 A. 518.

VI. The twenty-eighth reason alleges error because the court did not charge the jury that if they found the machines were not delivered when due and were not then ready for immediate use, the verdict must be for the defendant. The fact is that the county took the machines when delivered, and such acceptance would act as a waiver of lateness of delivery. Fleming v. Adamson, 321 Pa. 28, 182 A. 518. This was the instruction of the court. Trial Record, Vol. XIII, page 40.

VII. The thirty-fourth reason alleges inadequacy in the charge of the court in respect to the duty of the defendant to give notice to plaintiff of defects it had discovered in the machines. The defendant did not argue this point in its brief or on oral argument, and the record does not show that defendant raised this question of inadequacy at the time of the charge or immediately thereafter. The charge of the court was full and fair on the matter of notice of defects.

VIII. The remaining reasons for a new trial, Nos. 10, 11, 16, 17, 29, and additional reasons 9, 10, 11, 12, 13, 14, 15, 16 and 17 raise questions on the action of the court in receiving certain documents and testimony in evidence.

Reasons 10 and 11 object to the admission in evidence of certificates of custodians certifying that they had prepared the voting machines in their respective districts for use, had tested and checked all items, and that the machines were properly arranged for use in the November election of 1931. The certificates also certified that representatives of political parties were present and witnessed the testing and preparation of the machines. These were offered for the purpose of showing that the machines were tested and examined as required by law, and for that purpose they were admissible.

Reasons 16, 17, 29 and additional reason 9 relate to the admissibility in evidence of a letter written by G. P. Hopkins, Vice-President of the Commercial Credit Company, to the county commissioners of Northumberland County. The letter was dated May 20, 1932, advised that the Commercial Credit Company had advanced money to the Poole Engineering and Machine Company and had taken an assign-

ment from the Poole Company of all amounts that might be due it from Northumberland County. The letter also requested the right to inspect and examine the machines for the purpose of seeing if anything was necessary to be done to meet the requirements of the Secretary of the Commonwealth.

This letter was offered for the purpose of showing that the plaintiff requested permission to inspect the machines, to be followed by evidence that permission was then and henceforth denied until April, 1939. Trial Record, Vol. I, page 236. Defendant contends there was no assignment of the Poole contract to the Commercial Credit Company until February 8, 1937, and therefore the Commercial Credit Company had no right to inspect the machines in 1932. The twenty-fifth paragraph of the plaintiff's statement of claim does not fix the date of the assignment of the Poole contract to the Commercial Credit Company, but its averments show that it is plaintiff's position that the assignment took place before bankruptcy of the Poole Company, and that the trustee's action of February 8, 1937 merely recognized and confirmed the pre-existing right of the Commercial Credit Company. Under this theory of the case, the admission of the letter was proper for the purpose for which it was offered.

■ The tenth, eleventh and twelfth additional reasons complain of the court's action in admitting the testimony of L. Clifford Myers, a certified public accountant. The testimony of Mr. Myers was offered, along with certain records of election votes cast in 1930, for the purpose of showing that the machines in question did not fail in the November, 1931, election, because the number of votes recorded by them compared favorably with the number of votes cast at the November, 1930, election when the machines were not used. Myer's testimony and the certificates would not be conclusive on this point, but they were properly admitted as tending to show that the machines functioned properly in the 1931 election. For this purpose the testimony and certificates were competent.

■ The thirteenth additional reason complains of the court's action in admitting in evidence a letter from D. A. Wolfe, a representative of the Automatic Voting Machine Company, to B. B. Sklar, stating that it enclosed a check covering Sklar's expenses in connection with certain conferences at Scranton. The letter was offered for the purpose of showing that Sklar, a principal witness for the defendant, was an employee of a rival company when he testified in the equity suit in Northumberland County, for the purpose of contradicting Sklar on his testimony concerning his relation with Wolfe, and generally to affect Sklar's credibility. For these purposes it was competent and properly admitted.

■ The fourteenth additional reason complains of error in admitting the testimony of William H. Stange. Stange, an employee of the Poole Company, was permitted to testify that on election day in 1931 he had gone to the various polls and had seen no trouble with the machines. He was further permitted to testify that the various election officers informed him that the machines were working all right. This was offered to rebut the testimony of the election officers of Sunbury and Northumberland. Stange's testimony what he personally observed was undoubtedly proper. His testimony what certain election officers told him would not be properly admitted to prove the fact that the machines worked satisfactorily, for when related by Stange, it would be hearsay evidence, but those statements of the election officers to Stange properly could be admitted to prove what they had said to him, and by proving that, to contradict their present testimony, to affect their credibility. This was the purpose of introducing this testimony in rebuttal, and it was properly admitted. That part which might be attacked as hearsay was along the same line as other testimony which was clearly not hearsay, so that its admission from the lips of Stange was not prejudicial to the defendant.

■ The fifteenth additional reason alleges error in admitting the testimony of Neal Otey, who was in charge of the field work for the Poole Engineering and Machine Company. Otey's testimony was offered to prove his position, to prove that certain previous witnesses were employed under him, to prove the nature of certain conferences with them, and to show what instructions he had given them. For all of these purposes he was a competent witness and his testimony was competent. On a review of the whole record, any questions asked the witness beyond these points resulted in the admission of non-prejudicial testimony and substantial justice re-

sulted. There was no error in the admission of Otey's testimony.

The sixteenth and seventeenth additional reasons assign as error the admission of the testimony of Oscar L. Cover and E. J. Penning. Cover was called to rebut the testimony of Sklar that defective parts were used in construction of the voting machines. Penning was called to rebut the testimony of a prior witness that after the elections in 1931 no more machines of the American type were manufactured by the Poole Company, and therefore the company was in no position to make any necessary repairs. Their testimony was proper for these purposes, and on a reading of the whole record, the admission constitutes no ground for a new trial in view of Rule 61 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which reads: "No error in either the admission or exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict * * * unless refusal to take such action appears to the court to be inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect which does not affect the substantial rights of the parties."

IX. The forty-third reason for a new trial has been ignored because it is so drawn as to be unintelligible.

Therefore, it is ordered that all the reasons assigned by the defendant in support of its motion for a new trial be, and the same are hereby, overruled, and the motion for a new trial be, and the same is hereby, refused and denied.